**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

CHRISTOPHER R. KELLER,

Plaintiff,

v.

CALVIN JOHNSON, *et al.*,

Defendants.

Case No. 3:23-CV-00435-CLB

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ADDRESSING PLAINTIFF'S MISCELLANEOUS MOTIONS**

[ECF Nos. 46, 59, 60, 63]

This case involves a civil rights action filed by Plaintiff Christopher R. Keller ("Keller") against Defendants Benedicto Gutierrez ("Gutierrez"), Calvin Johnson ("Johnson"), James Scally ("Scally"), Stephen Sisolak ("Sisolak"), and Julie Williams ("Williams) (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment,[1] (ECF No. 46), Keller's motion for judicial notice and admission of exhibits,[2] (ECF No. 59), Keller's motion for appointment of counsel, (ECF No. 60), and Keller's motion to expand his opposition.[3] (ECF No. 63.) For the reasons stated below, the Court grants Defendants' motion for summary judgment, (ECF No. 46), grants Keller's motion for judicial notice and admission of exhibits, (ECF No. 59), denies Keller's motion for appointment of counsel, (ECF No. 60), and grants Keller's motion to expand his opposition, (ECF No. 63).

///

///

///

---

[1]    Keller responded, (ECF No. 58), and Defendants replied. (ECF No. 62.)

[2]    ECF Nos. 59 and 60 are identical. Defendants responded and indicated they do not oppose Keller's motion for appointment of counsel, (ECF No. 60), but did not indicate whether they opposed the motion for judicial notice and admission of exhibits, (ECF No. 59). (ECF No. 61.)

[3]    Defendants opposed, (ECF No. 64), and Keller did not reply.

I.      BACKGROUND

        A.      Procedural History

On August 31, 2023, Keller filed a civil rights complaint under 42 U.S.C. § 1983 and an application to proceed in forma pauperis for events which occurred while incarcerated with the Nevada Department of Corrections ("NDOC") at High Desert State Prison ("HDSP"). (ECF Nos. 1, 1-1.) The Court screened the complaint pursuant to 28 U.S.C. § 1915A(a) and allowed Keller to proceed on two claims: (1) Eighth Amendment conditions of confinement based on lack of outdoor recreation against Johnson, Williams, and Sisolak; and (2) Eighth Amendment deliberate indifference to a serious medical need against Scally and Gutierrez. (ECF No. 5.)

Keller was allowed to proceed on the conditions of confinement claim based on allegations that during the COVID-19 pandemic, Johnson, Williams, and Sisolak implemented a "Modified Program Operations Plan" (the "MPO"), which restricted his access to outdoor recreation. (ECF No. 6 at 3.) Keller alleges that one of the main components of the Plan was the isolation of inmates, who sometimes had to remain in their cells for months at a time, and Keller himself spent six months in his cell without leaving. (*Id.*) Keller alleges the MPO therefore all but eliminated access to outdoor recreation, without which he suffered from psychological problems. (*Id.* at 4-5.)

Turning to the second claim, Keller was permitted to proceed on a deliberate indifference based on his allegations that Keller filed kites and grievances concerning his back, hip, and head injuries, which were ignored by Scally and Gutierrez. (*Id.* at 6-11.) Keller's complaint alleges he went months without treatment and continues to suffer from pain and leg numbness. (*Id.*) Keller alleges Scally and Guiterrez allegedly knew about these injuries but failed to provide any medical treatment. (*Id.*)

        B.      Factual Background

The Court will describe the undisputed facts as to each claim separately. The facts as stated herein are undisputed unless otherwise noted by the Court.

///

### 1.    Conditions of Confinement – Outdoor Recreation

In his complaint, Keller lists the time frame for this claim as arising between June 1, 2020, through January 1, 2021. (ECF No. 6 at 3.) On June 2, 2020, Keller was moved from Lovelock Correctional Center ("LCC") to Ely State Prison ("ESP"), before being moved to HDSP on June 3, 2020.[4] (ECF No. 46-1 at 4.) From June 3, 2020, through June 17, 2020, Keller was housed in Unit 4A at HDSP. (*Id.*) Keller was then moved to Unit 10F on June 17, 2020, and to Unit 10C on July 17, 2020, where he remained until being moved again to Unit 12E on September 29, 2020. (*Id.*) Keller was briefly housed in Unit 12D from November 2, 2020, to November 5, 2020, before being moved to Unit 3C for the remainder of the relevant time period. (*Id.*)

Keller's medical records show that he received a mental health evaluation on November 24, 2020, and Keller "presented with no mental health concerns." (ECF No. 49-1 at 61 (sealed).) Keller was again evaluated on the 9th, 16th, 23rd, and 30th of December 2020, and each time presented no mental health concerns. (*Id.* at 62-63.) Keller was also evaluated on January 6, 2021, and again reported no mental health concerns. (*Id.* at 64.)

Julie Davis ("Davis"), was an Associate Warden at HDSP during the relevant time period, provided a declaration regarding NDOC and HDSP procedures during the COVID-19 pandemic. (ECF No. 46-2.) Davis declares that according to the schedules which were in place between June 3, 2020, and January 1, 2021, Keller "was permitted a minimum of two hours, and a maximum of five hours of outdoor yard time weekly." (*Id.*) Keller was also permitted a minimum of two hours, and a maximum of seven hours, at least five days per week, of out-of-cell time (also referred to as "tier time"). (*Id.*; *see* ECF No. 46-3.) The minimums were also increased when possible to allow inmates as much five hours of outdoor time weekly.[5] (*Id.*) When allowed outside of his cell, Keller was able to walk

---

[4]    Keller's complaint does not name any defendants who worked at LCC or ESP or include any allegations regarding LCC or ESP. (*See* ECF No. 6.)

[5]    Davis's declaration also states that inmates were allowed "to have as much

3

around the tier, perform low and non-impact exercises by himself and on the tier, and interact with others. (*Id.*)

Davis also declares that these schedules were followed daily, except when safety and security concerns required departures to ensure the safety and wellness of the offenders. (*Id.*) These safety and security concerns are increased when there are also staff shortages.[6] (*Id.*)

### 2. Deliberate Indifference to Serious Medical Need

On July 11, 2020, Keller submitted a medical kite asking to see a doctor because he was in extreme pain due to his pinched sciatic nerve. (ECF No. 49-1 at 47 (sealed).) A stamp on the page indicates he was placed on a doctor's sick call list. (*Id.*) On June 22, 2021, Keller submitted a medical kite stating that he was in "extreme pain" and that he has put in "multiple kits & grievances." (*Id.* at 45.) On May 10, 2022, Keller submitted a medical kite stating that his back and sciatic nerve hurt, and wondering when he would be able to see a doctor. (*Id.* at 42.) The response indicates he was scheduled for an appointment. (*Id.*) On May 11, 2022, Keller submitted another medical kite relating to his pain. (*Id.* at 43.)

On February 24, 2022, Scally responded to a first-level grievance filed by Keller in relation to Grievance No. 20063118885. (ECF No. 6 at 24; ECF No. 46-4 at 25.) Keller first filed the informal grievance for Grievance No. 20063118885 on March 15, 2021. (ECF No. 46-4 at 24.) The informal grievance stated that Keller has had "a kite in to Medical for approx 6 months" regarding "extream (sic) unbearable pain" due to Keller's "pinched sciatic nerve." (*Id.*) Keller then submitted a first level grievance on September 27, 2021,

as forty-nine hours of tier time *daily*[.]" (ECF No. 46-2 at 3 (emphasis added).) Although it appears Davis meant to say "weekly" instead of "daily," the Court will not make this assumption when determining the undisputed facts.

[6]     Defendants also provide the declaration of Jeremy Bean, another Associate Warden at HDSP, to show that HDSP was understaffed. (ECF No. 46-5.) However, this declaration is signed and dated on April 11, 2023, and discusses only staffing levels during 2023. (*Id.*) The declaration does not explain whether the same staffing issues were present between *June 1, 2020, and January 1, 2021*– the time period relevant to this case. (*See id.*) Thus, the declaration does not establish that HDSP was understaffed during the period at issue and is therefore irrelevant to the issues in this case.

stating that he had not received a response to his informal grievance and was therefore moving to the first level. (*Id.*) On October 25, 2021, the informal level grievance was denied because Keller was already "on the provider list for follow up with the NDOC medical provider" who would determine whether a specialist referral was needed. (*Id.* at 24.) The entry on Keller's grievance history indicates he did not receive this rejection until December 26, 2021. (*Id.*) On November 28, 2021, Keller filed a second level grievance stating he had not received a response to the first level grievance and was therefore moving forward with the grievance process. (*Id.*)

On December 17, 2021, Keller submitted the first level grievance to which Scally responded. (ECF No. 6 at 24.) This first level grievance merely stated that "Keller has already previously submitted the first & second level grievance on this issue & log # & is just resubmitting this for tracking purposes." (ECF No. 6 at 24.) Scally's grievance response included an improper grievance memo, which informed Keller that the grievance was being denied because he resubmitted a grievance he had previously filed which was awaiting a response. (ECF No. 6 at 24; ECF No. 46-4 at 25.) There is no evidence in the record of Scally responding to any other grievances or references to Scally in Keller's medical file. (*See* ECF Nos. 46-4, 49-1 (sealed).)

Keller was moved from HDSP to LCC on March 3, 2022. (ECF No. 46-1 at 4.) On April 20, 2022, Keller was seen by a provider at LCC for his complaints of "right sciatica pain." (ECF No. 49-1 at 25 (sealed).) The notes state that "[p]ain radiates from lower back down through right gluteal area to toes. Toes sometimes become numb." (*Id.*)

On May 22, 2023, Gutierrez responded to the original first level grievance filed Grievance No. 20063118885, which, as noted above, was submitted by Keller on September 27, 2021, and explained that because Keller had not received a response to his informal grievance, he was moving to the first level.[7] (ECF No. 46-4 at 25.) Gutierrez's response marks the grievance as "resolved" because Keller was moved to LCC prior to

---

[7] Although not at issue in this case, the Court notes that based on the timeline for Grievance No. 20063118885, it appears the official responses were severely, and very likely improperly, delayed.

his scheduled medical appointment at HDSP, but Keller was evaluated at LCC for his complaints of pain. (*Id.*) The grievance notes that treatment recommendations were made and Keller was repeatedly provided with ibuprofen to manage his pain. (*Id.*) The response then directs Keller to "continue to submit medical requests on the medical kite and service report form DOC 2500 at your current facility for any other medical requests or medication renewals per Medical Directive 443.01." (*Id.*) There is no evidence in the record of Gutierrez responding to other grievances or references to Gutierrez in Keller's medical file. (*See* ECF Nos. 46-4, 49-1 (sealed).)

On August 1, 2023, Keller received x-rays of his lumbar spine. (*Id.* at 60.) The exam results show that Keller's alignment was within normal limits with no fracture or subluxation, no significant degenerative changes, and no pars defect was identified on oblique views. (*Id.*) Dr. Leon Jackson reviewed the results, and his impression of the exam was "negative lumbar spine." (*Id.*)

## II.      MOTION FOR SUMMARY JUDGMENT

In their motion for summary judgment, Defendants argue they are entitled to summary judgment because: (1) Defendants did not personally participate in the alleged constitutional violations; (2) Keller's conditions of confinement claim fails on the merits; (3) Keller's deliberate indifference to medical needs claim fails on the merits; and (4) Defendants are entitled to qualified immunity. (ECF No. 46.)

In Keller's opposition to the motion for summary judgment, he argues the undisputed facts show that he succeeds on the merits of both claims. (ECF No. 58 at 2.) Keller also argues that because courts have found claims alleging facts similar to his outdoor recreation claim survive summary judgment, his claims should also survive. (*Id.* at 5.)

Defendants replied, reiterating their arguments made in the motion for summary judgment and arguing that Keller failed to meet his burden on summary judgment of establishing a dispute of material fact in his opposition. (ECF No. 62.)

///

### A.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claims; or (2) submitting admissible

evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita*, 475 U.S. at 586-87.

When a pro se litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under

penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### B.    Eighth Amendment Conditions of Confinement

The screening order in this case allowed Keller to proceed on the Eighth Amendment conditions of confinement claim against Johnson, Williams, and Sisolak. (ECF No. 5.) "It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

> [A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious[;]' a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities'[.] …
>
> The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.'

*Farmer*, 511 U.S. at 834 (citations omitted); *see also Hope v. Pelzer*, 536 U.S. 730, 737-38 (2002); *Wilson v. Seiter*, 501 U.S. 294, 299-300 (1991) (discussing subjective requirement); *Hampton v. California*, 83 F.4th 754, 766-67 (9th Cir. 2023) (discussing objective and subjective components of an Eighth Amendment claim), *cert. denied*, 144 S.Ct. 2520 (2024).

When determining whether conditions of confinement meet the objective prong of

the Eighth Amendment analysis, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. *See Toussaint*, 801 F.2d at 1107. The objective prong "requires a plaintiff to plausibly allege that it is 'contrary to current standards of decency for anyone to be . . . exposed against his will' to the relevant hazard," that is, that the resulting risk is not "one that 'society chooses to tolerate.'" *Hampton*, 83 F.4th at 766 (quoting *Helling*, 509 U.S. at 35-36).

> Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets.

*Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *see also Thomas v. Ponder*, 611 F.3d 1144, 1151 (9th Cir. 2010); *Osolinski*, 92 F.3d at 938-39; *Toussaint*, 801 F.2d at 1107. When considering the conditions of confinement, the court should also consider the amount of time to which the prisoner was subjected to the condition. *See Hutto v. Finney*, 437 U.S. 678, 686-87 (1978); *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).

As to the subjective prong of the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate indifference" to unconstitutional conditions of confinement to establish an Eighth Amendment violation. *See Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303.

> To prove deliberate indifference, subjective recklessness is required, that is, an official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Harrington*, 785 F.3d at 1304 (citation and internal quotation marks omitted).

The Ninth Circuit has "recognized that exercise is one of the basic human necessities protected by the Eighth Amendment." *Norbert v. City & Cnty. of San Francisco*, 10 F.4th 918, 928-29 (9th Cir. 2021) (citation and internal quotation marks

10

omitted). "[T]he Constitution requires jail officials to provide outdoor recreation opportunities, *or otherwise meaningful recreation*, to prison inmates." *Id.* at 929 (emphasis original) (quoting *Shorter v. Baca*, 895 F.3d 1176, 1185 (9th Cir. 2018)). Thus, outdoor exercise can indeed be required, when "otherwise meaningful recreation" is not available, and therefore "the constitutionality of conditions for inmate exercise must be evaluated based on the full extent of the available recreational opportunities." *Id*. at 929-30. Furthermore, "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997); *Norwood v. Vance*, 591 F.3d 1062, 1070 (9th Cir. 2010) (recognizing that temporary denial of outdoor exercise with no medical effects is not a substantial deprivation).

Prison officials may restrict outdoor exercise based on weather, unusual circumstances, or disciplinary needs. *See Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)), *amended by* 135 F.3d 1318 (9th Cir. 1998); *Noble v. Adams*, 646 F.3d 1138, 1142-43 (9th Cir. 2011) (as amended) (concluding that prison officials were entitled to qualified immunity from § 1983 claim that post-riot lockdown of prison resulted in denial of Eighth amendment right to exercise). In cases of genuine emergency, the temporary deprivation of outdoor exercise may not violate the Eighth Amendment. *Hayward v. Procunier*, 629 F.2d 599, 603 (9th Cir. 1980). "The cost or inconvenience of providing [exercise] facilities[, however,] is not a defense to the imposition of a cruel punishment." *Spain*, 600 F.2d at 200.

### 1.    Objective Prong

The Court will first evaluate the objective prong. In *Norbert v. City & Cnty. of San Francisco*, the Ninth Circuit affirmed the district court's finding that "inmates were given constitutionally sufficient recreation time" when inmates were "offered at least 30 minutes of exercise time in the [indoor] gyms seven days a week," and "general population inmates c[ould] access the day room for 4.5 hours on weekdays and 8 hours on weekend days." 10 F.4th at 933. In *Cardenas-Ornelas v. Johnson*, the Ninth Circuit found there was a genuine factual dispute "evidence supported Cardenas-Ornelas's claim that he was

"confined to [his] cell for 23 to 23 1/2 hours a day" except for when he went to work in Prison Industries" and that "there [was] no evidence that Unit 9 inmates had *any* access to meaningful opportunities for exercise between March 18, 2020, and July 27, 2021." *Cardenas-Ornelas v. Johnson*, 165 F.4th 1234, 1240-41 (9th Cir. 2026), *rev'd on other grounds*, 165 F.4th 1234, 1239 (9th Cir. 2026) (finding that "sorting cards or hangers" in Prison Industries and in-cell exercise did not constitute otherwise meaningful recreation.)

In reviewing evidence submitted in this case, the Court finds that the facts of the instant case are more analogous to *Norbert* than to *Cardenas-Ornelas*. In this case, the undisputed facts show that Keller had meaningful opportunities for exercise between June 3, 2020, and January 1, 2021. Between June 3, 2020, and January 1, 2021, during the COVID-19 pandemic, Keller was permitted: (1) a minimum of two hours, and a maximum of five hours of outdoor yard time weekly; (2) a minimum of two hours, and a maximum of seven hours, at least five days per week, of out-of-cell time (also referred to as "tier time"); (3) when on tier time, Keller was able to walk around the tier, perform low and non-impact exercises by himself and on the tier, and interact with others; and (4) these schedules were followed daily, except when safety and security concerns required departures to ensure the safety and wellness of the offenders, which were increased when there were also staff shortages. (ECF No. 46-2.)

First, the Court notes that the COVID-19 pandemic constitutes an "unusual circumstance" wherein prison officials may restrict outdoor exercise. *Spain*, 600 F.2d at 199. Keller himself acknowledges in his complaint that "[n]o-one in the United States contemplated this pandemic." (ECF No. 6 at 4.) Additionally, the availability of tier time constitutes "otherwise meaningful recreation" opportunities, meaning that the requirement for *outdoor* exercise is not necessarily required. *Norbert*, 10 F.4th at 932-35; *see LeMaire v. Maass*, 12 F.3d 1444, 1458 (9th Cir. 1993) (where inmate was able to do low and non-impact aerobic exercise in his cell, he was not deprived of all exercise). Furthermore, facility administrators have "considerable discretion to curtail access to exercise based on security concerns." *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1212 (9th Cir. 2008)

(citing *Bell v. Wolfish,* 441 U.S. 520, 539 n. 23 (1979)). Here, the evidence establishes that to the extent the daily schedules were not followed, it was because of safety and security concerns. (ECF No. 64-2.) Thus, to the extent Keller did not receive the yard time or tier time as listed on the schedule, it was within the NDOC's discretion to do so. *Pierce*, 526 F.3d at 1212. Finally, Defendants present evidence showing Keller did not present with or report any mental health problems during multiple evaluations by mental health care providers during the subject time period. (ECF No. 49-1 at 61-64 (sealed).) Therefore, to the extent Keller did not receive the yard time or tier time as listed on the schedule, he did not suffer from psychological problems as he alleged in his complaint. *Norwood*, 591 F.3d at 1070 (recognizing that temporary denial of outdoor exercise with no medical effects is not a substantial deprivation). Defendants have thus met their burden on summary judgment of establishing the absence of evidence to support the objective prong of the conditions of confinement claim. *Pakootas*, 905 F.3d at 593-94.

The burden now shifts to Keller to provide evidence showing a genuine issue of material fact exists as to objective prong of this claim. *Matsushita,* 475 U.S. at 586. In opposition, Keller repeatedly argues that "common knowledge" establishes that he was deprived of access to outdoor recreation. (ECF No. 58 at 5.) As to tier time, Keller argues "it is common knowledge that 15 minutes every 3 to 5 days was the norm being allowed for the majority of Covid & the 15 minutes was only allowed for phone calls or showers." (*Id.*) However, this is not common knowledge to the Court and Keller has not presented any evidence support these claims. Moreover, conclusory statements, speculative opinions, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun*, 509 F.3d 984. Keller does not support these assertions by providing a statement of *his personal knowledge* as to what he experienced. Fed. R. Civ. P. 56(c)(1); *Jones*, 393 F.3d at 923 (for *pro se* party's contentions in motions and pleadings to qualify as evidence, the contents must be based on personal knowledge). Thus, Keller failed to meet his burden of establishing that a genuine dispute of material facts exists as to the objective prong. *Matsushita,* 475 U.S. at

13

586. Defendants are therefore entitled to summary judgment based on the objective prong alone. *See Farmer*, 511 U.S. at 834 (prison official violates the Eighth Amendment only when objective and subjective prongs are met.)

## 2.   Subjective Prong

Although the Court has already determined that Defendants are entitled to summary judgment on the objective prong, the Court will evaluate whether, had Keller met the objective prong, he could satisfy the subjective prong. "[A]n official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]" *Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015) (citation and internal quotation marks omitted). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Defendants argue Keller cannot establish the subjective prong because the existence of the MPO and new yard schedules establish that Defendants were taking proactive steps to provide as much outdoor and recreation time as possible in light of the unprecedented COVID-19 pandemic. (ECF No. 46 at 14.)

In *Cardenas-Ornelas*, the Ninth Circuit held there was a factual dispute as to the subjective prong "regarding whether NDOC's COVID-19 protocols required the denial of yard time for Unit 9 inmates for over a year[]" and because the Defendant personally reviewed and denied Cardenas-Ornelas's first-level grievance, which alleged that Cardenas-Ornelas was being confined in his cell "for 23 to 23 1/2 hours a day" except for when he was called to work in Prison Industries. 165 F.4th at 1241. Again, this case is distinct from *Cardenas-Ornelas* because the evidence shows Keller was entitled to outdoor time during the subject period and there is no evidence in the record that any Defendants reviewed and denied Keller's grievances during the subject time frame.[8]

---

[8]   Keller's grievance history shows that on March 23, 2022, Williams responded to Keller's grievance which stated, "I am still suffering from not recivingin (sic)

Therefore, even if Keller had satisfied the objective prong, Defendants have met their burden of establishing the absence of genuine dispute of material facts on the subjective prong. *Pakootas*, 905 F.3d at 593-94.

Here again, the burden now shifts to Keller to provide evidence showing a genuine issue of material fact exists as to objective prong of the Eighth Amendment analysis. *Matsushita,* 475 U.S. at 586. Once more, Keller only relies on his claims of "common knowledge" and favorable outcomes in other cases raising similar claims. (ECF No. 58 at 12-13.) As explained above, this is insufficient to meet his burden on summary judgment. *Matsushita,* 475 U.S. at 586. Defendants are therefore also entitled to summary judgment based on the subjective prong, and their motion for summary judgment is granted as to Keller's conditions of confinement claim.

### C.    Eighth Amendment Deliberate Indifference

The screening order in this case allowed Keller to proceed on the Eighth Amendment deliberate indifference to medical needs claim against Scally and Gutierrez. (ECF No. 5.) Defendants argue they are entitled to summary judgment on this claim because: (1) Scally and Gutierrez did not personally participate in the alleged constitutional deprivation; (2) Keller cannot show that he had an objectively serious medical need under the objective prong; and (3) Keller cannot show that Defendants were deliberately indifferent to that need under the subjective prong. (ECF No. 46 at 7-8, 14-19.) In opposition, Keller argues Scally and Gutierrez "were supposed to participate in Keller's medical care but were deliberately indifferent" because they "had the job descriptions & ability to see to Keller receiving medical care." (ECF No. 58 at 8-9, 17.) Keller argues that it was Scally's job to respond to grievances and therefore Scally personally participated in the alleged constitutional violation. (*Id.* at 9.)

The Court will begin by analyzing whether Scally and Gutierrez personally participated in this alleged constitutional deprivation. "There are two elements to a section

yard outside exervse (sic)." (ECF No. 64-4.) However, this grievance is from more than a year after the time frame listed for this claim and therefore cannot be used to establish deliberate indifference on this claim.

1983 claim: (1) the conduct complained of must have been under color of state law, and (2) the conduct must have subjected the plaintiff to a deprivation of constitutional rights." *Jones v. Cmty. Redevelopment Agency of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984). A prerequisite to recovery under the Civil Rights Act, 42 U.S.C. § 1983, is that the plaintiff prove that the defendants deprived him of a right secured by the Constitution and the laws of the United States. *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985). Liability under § 1983 arises only upon a showing of personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). "[V]icarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Generally, one cannot state a constitutional claim based on their dissatisfaction with the grievance process. *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1157 (E.D. Wash. 2014). Where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act, the defendant cannot be liable under § 1983." *Id.* (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999)). However, the issue of whether responding to a grievance can rise to the level of personal participation required for a § 1983 claim was addressed by the Ninth Circuit in *Snow v. McDaniel*, 681 F.3d 978 (9th Cir. 2012), *overruled on other grounds in Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). In *Snow*, the inmate plaintiff had submitted several grievances about the denial of a recommended hip surgery; there was testimony that the warden and associate warden were aware of the grievances, and that they had reviewed an order stating that the inmate needed a hip replacement. *Snow*, 681 F.3d at 989. Defendants argued there was no evidence in the record they were personally involved in any of the medical treatment decisions. *Id.* The Ninth Circuit, however, said

their review of the grievance was sufficient to demonstrate that the warden and associate warden were aware of the inmate's serious hip condition and failed to act to prevent further harm so that the warden and associate warden were not entitled to summary judgment based on lack of personal participation. *Id.*

Turning the facts of this case, Scally and Gutierrez's responses to Keller's grievances could be sufficient to meet the personal participation required for a § 1983 suit if, through their own individual actions, they violated the Constitution. However, there is no evidence that these Defendants were involved in or able to influence Keller's medical care. Additionally, "[h]olding a prison official personally responsible for damages simply because he is familiar with a prisoner's circumstances through direct communications with the prisoner and through communications with his subordinates [or caseworkers] is such a broad theory of liability that it is inconsistent with the personal responsibility requirement for assessing damages against public officials in a 42 U.S.C. § 1983 suit." *May v. Williams*, No. 2:10-CV-576-GMN-LRL, 2012 WL 1155390, at *3 (D. Nev. Apr. 4, 2012) (citing *Crowder v. Lash*, 687 F.2d 996, 1005-1006 (7th Cir. 1982); *see also Jackson, v. State of Nevada*, No. 2:16-cv-00995-APG-NJK, 2019 WL 6499106, at *7 (D. Nev. Dec. 3, 2019) ("[C]ourts have held that merely denying a grievance without some decision-making authority or ability to resolve the underlying issue grieved is not enough to establish personal participation."). Moreover, Gutierrez's response indicates that Keller had been evaluated by a medical professional for his complaints of pain and that he was receiving medication to treat his pain. (ECF No. 64-4 at 25.) Therefore, the evidence shows that to Gutierrez's knowledge, Keller had been evaluated and prescribed treatment for his pain.

Based on the above, Defendants have met their burden of establishing that the undisputed evidence shows neither Scally nor Gutierrez personally participated in this claim. *Pakootas*, 905 F.3d at 593-94. Turning to Keller's burden, he does not present evidence that Scally or Gutierrez did anything more than simply respond to grievances, which does not rise to the level of participation required for a § 1983 suit. Thus, Keller has

not met his burden on summary judgment. *Matsushita,* 475 U.S. at 586. Based on their lack of personal participation, Scally and Gutierrez are entitled to summary judgment on this claim. Consequently, Defendants' motion for summary judgment should be granted in its entirety.[9]

## II.   MISCELLANEOUS MOTIONS

Finally, the Court will address Keller's miscellaneous motions in the order in which they were filed.

### A.   Judicial Notice and Admission of Exhibits

In the motion for judicial notice and admission of exhibits, Keller seeks the Court take judicial notice of the "entirety" of the case *Ross v. Johnson*, 2:22-cv-00259-CDS-VCF. (ECF No. 59 at 1-2.) Keller makes this request based on Defendants' inclusion of the declaration of Associate Warden Jeremy Bean, which was originally created for and filed in *Ross*, as an exhibit in support of their motion for summary judgment. (*Id.*; ECF No. 46-5.) Keller further requests the Court take judicial notice of *Cardenas-Ornelas v. Wickham*, No. 2:21-cv-00030-ART-VCF, 2024 WL 4368152 (D. Nev. Sept. 30, 2024), "if necessary to establish Eight Amendment violations for lack of exercise," because Keller was housed in the same area as the plaintiff in that case during the COVID-19 pandemic.[10] (ECF No. 60 at 2.)

A court may take judicial notice of a fact that is generally known and which is not subject to dispute, and deemed authentic. *See* Fed. R. Evid. 201. Courts "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'" *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo*, 971 F.2d 244, 248 (9th Cir. 1992). However, the Court need not take notice of documents that do not provide any additional

---

[9]   As the Court finds that Keller's claim fails on the merits, it need not address Defendants' other arguments or defenses.

[10]   It is unclear exactly what Johnson is seeking in relation to *Cardenas-Ornelas*. (*See* ECF No. 59 at 2.) However, based on the totality of the motion, it appears Johnson also seeks the Court take judicial notice of this case.

relevant information, even if they would otherwise be the proper subject of judicial notice. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1410 n.2 (9th Cir. 1990) (declining to take judicial notice of another action "not relevant" to the case).

As to *Ross v. Johnson*, the Court declines to take judicial notice of the "entirety" of another case. "Judges are not like pigs, hunting for truffles buried in the record." *Murthy v. Missouri*, 603 U.S. 43, 67 n.7 (2024) (quoting *Gross v. Cicero*, 619 F.3d 697, 702 (7th Cir. 2010)). The Court will not parse through an entire case's worth of docket entries to find information which may be helpful to Keller.

Turning to *Cardenas-Ornelas v. Wickham*, Keller seeks the Court take judicial notice of this case "if necessary to overcome the Defendants' motion for summary judgment." (ECF No. 59 at 2.) The Court has examined this case for the purpose of evaluating Keller's conditions of confinement claim, as it is a recent decision from the Ninth Circuit concerning an access to outdoor recreation conditions of confinement claim. However, granting Keller's request would essentially constitute legal advice as it asks the Court to advise him of whether the case would be "necessary" to overcome the motion in this case. Neither Keller nor any other party to this action is entitled to legal advice from the Court. *See, e.g., Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Jacobsen v. Filler*, 790 F.2d 1362, 1366 (9th Cir. 1986) (rejecting *pro se* party's argument that it was the court's "duty" to advise him because "pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys"). As the Supreme Court has explained, requiring courts to dispense legal advice to parties is antithetical to the judge's "role as [an] impartial decisionmaker[ ]." *Pliler*, 542 U.S. at 231; *accord Jacobsen*, 790 F.2d at 1366 (noting that "to give [a party legal] advice would entail the district court's becoming a player in the adversary process rather than remaining its referee"). Moreover, it is not the Court's responsibility to root through the entirety of the filings in this case to determine, what, if any, of those filings would be helpful to Keller in this case. The Court finds no basis in the record before it to depart from these well-established principles. Therefore,

Keller's motion for judicial notice and admission of exhibits is denied in its entirety.

### B.     Motion for Counsel

Keller next filed a motion for appointment of counsel. (ECF No. 60.) There is no constitutional right to appointed counsel in a § 1983 action. *E.g., Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *opinion reinstated in pertinent part*, 154 F.3d 952, 954 n.1 (9th Cir. 1998) (en banc). The provision in 28 U.S.C. § 1915(e)(1) gives the court discretion to "request an attorney to represent any person unable to afford counsel."  28 U.S.C. § 1915(e)(1); *see, e.g., Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1998) (en banc.)  While the decision to request counsel lies within the discretion of the district court, the court may exercise this discretion to request counsel only under "exceptional circumstances." *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

A finding of "exceptional circumstances" requires the court to evaluate (1) the plaintiff's likelihood of success on the merits and (2) the Plaintiff's ability to articulate his claims *pro se* considering the complexity of the legal issues involved. *Id.* (quoting *Wilborn*, 789 F.2d at 1331) (internal quotation marks omitted). Neither factor is dispositive, and both factors must be considered before a court decides. *Id.* The difficulties every litigant faces when proceeding *pro se* does not qualify as an exceptional circumstance. *Wood v. Housewright*, 900 F. 2d 1332, 1335-36 (9th Cir. 1990). While almost any *pro se* litigant would benefit from the assistance of competent counsel, such a benefit does not rise to the level of "exceptional circumstances." *Rand*, 113 F.3d at 1525. Rather, the plaintiff must demonstrate that he is unable to articulate his claims due to their complexity. *Id.*

Keller's motion for appointment of counsel essentially states that he should be appointed counsel because the plaintiff in another case, *Ross v. Johnson*, 2:22-cv-00259-CDS-VCF, had counsel appointed. (ECF No. 60 at 2.) Keller also acknowledges he has previously filed "4 to 5 motions for appointment of counsel." (*Id.*)

Here, as with his previous motions, Keller fails to show that exceptional circumstances exist to warrant the appointment of counsel. Keller does not provide any information to show why he faces more difficulties than every litigant faces when

proceeding *pro se*. *Wood*, 900 F. 2d at 1335-36. Keller also does not argue that he is likely to succeed on the merits of his case or that the specific claims in his case are complex. *Terrell*, 935 F.2d at 1017. Because Keller has not demonstrated exceptional circumstances, Keller's motion for appointment of counsel is denied.

### C.     Motion to Expand Opposition

Finally, the Court will address Keller's motion to expand his opposition to Defendants' motion for summary judgment. (ECF No. 63.) Keller requests the Court consider a medical record contained in Exhibit D to Defendants' motion for summary judgment, (ECF No. 49-1 (sealed)). *Id.* Keller does not identify the specific page, only stating that "[t]he document has boxes to mark for issues" and that each box was marked with "no" but in the line next to the medical box, "cronic (sic) back pain" is written. (*Id.*) Keller states that this "shows how medical staff treat this serious medical need" and that "when a psych nurse comes around a unit on lockdown," and is made aware that an inmate has a serious medical need, the psych nurses respond by saying "I'm with psych, send a kite." (*Id.*) Defendants oppose, arguing Keller is attempting to improperly file a surreply. (ECF No. 64.)

Pursuant to the Court's Local Rules, surreplies are not permitted without leave of court. LR 7-2(b). Motions for leave to file a surreply are discouraged. *Id*. Leave to file a surreply may be granted when a reply brief raises new issues. *See Morgan Stanley Smith Barney LLC v. Takahashi*, No. 2:24-cv-02127-CDS-MDC, 2025 WL 35134, at *4, (D. Nev. Jan. 6, 2025) (granting leave to file sur-reply where moving party raised new matters for the first time in a reply brief).

In this case, the Court agrees with Defendants that Keller has not established that he is entitled to file a surreply. Furthermore, the document Keller seeks the Court review is already attached as an exhibit to the motion for summary judgment, and therefore is already being considered by the Court. However, given Keller's status as a *pro se* litigant, the Court reviewed his motion to expand the opposition before evaluating Defendants' motion for summary judgment and therefore grants this motion.

## III.   CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment, (ECF No. 46), is **GRANTED**.

**IT IS FURTHER ORDERED** that Keller's motion for judicial notice and admission of exhibits, (ECF No. 59), is **GRANTED**.

**IT IS FURTHER ORDERED** that Keller's motion for appointment of counsel, (ECF No. 60), is **DENIED**.

**IT IS FURTHER ORDERED** that Keller's motion to expand his opposition, (ECF No. 63), is **GRANTED**.

**IT IS FURTHER ORDERED** that this action be **CLOSED** and that judgment be entered accordingly.

**IT IS SO ORDERED**.

**DATED**: March 16, 2026.

_____
**UNITED STATES MAGISTRATE JUDGE**

22